FIRST TRUST JOINT STOCK LAND BANK of Chicago, Plaintiff, Appellee, v. CORNELIUS ABKES et al., Defendants, Appellants; JOHN NEYMEYER et al., Interveners, Appellees.

No. 44008.

MARCH 8, 1938.

E. H. Lundy, D. W. Dickinson, John L. Butler, and Leming & Hobson, for appellants.

F. J. McGreevy, Harold A. Brown, John E. Behnke, and H. H. Lommen, for appellee.

MILLER, J.—On April 14, 1932, plaintiff-appellee herein filed in the district court of Butler County its petition in equity against appellants Cornelius Abkes and Jessie Abkes, husband and wife, therein asking for the foreclosure of a real estate mortgage against 440 acres of land owned by said defendants. On March 13, 1934, judgment and decree of foreclosure was en-

tered in said cause rendering judgment in favor of the plaintiff in the sum of $45,906.42, with interest from March 10, 1934, at 8 per cent per annum, and for costs, which decree likewise provided for the foreclosure of plaintiff's mortgage against the real estate involved. On May· 7, 1934, the real estate involved was sold at sheriff's sale under special execution to the plaintiff herein for the sum of $42,934.80. Thereafter, upon application of the owners, an order was entered on March 18, 1935, extending the period of redemption to March 1, 1937. On April 11, 1936, plaintiff and the interveners herein entered into a written contract, by the terms of which plaintiff sold to the interveners the real estate involved for a consideration of $40,000. In said written contract it was stated that plaintiff then held sheriff's certificate to the premises, upon which the time of redemption had been extended to March 1, 1937, and that the contract was subject to the acquisition of title by the plaintiff through its foreclosure proceedings. Said written contract further provided that in the event redemption was made, that all moneys paid by the redemptioner over and above $40,000 and interest at 5½ per cent from March 1, 1936, should belong to the interveners. On February 25, 1937, the defendants again filed an application for extension, therein asking that the period of redemption be extended to March 1, 1939, as provided by the Acts of the 47th General Assembly, chapter 78. On March 4, 1937, an order of court was filed bearing date of March 1, 1937, wherein hearing on said application was fixed for the 15th day of March, 1937, and wherein directions were provided for giving notice of said hearing.

On March 15, 1937, the plaintiff-appellee filed its resistance to said application, therein alleging that plaintiff's lien with accumulated interest was far in excess of the fair and reasonable market value of the security; that the defendants were hopelessly insolvent; that defendants had made numerous efforts to refinance their debts, all without success; that the income from said premises for the prior six years indicated poor management; and that the application to extend the period of redemption was not made in good faith. In said resistance plaintiff-appellee further contended that chapter 78 of the Acts of the 47th General Assembly was unconstitutional and void; and also that the prior extended period of redemption had expired before the order of the court was granted fixing time for hearing on the

present application, and that as a result thereof the court was without jurisdiction to grant any further extension of the period of redemption.

On March 15, 1937, the interveners herein filed their resistance to defendants' application for continuance, therein alleging that on account of the written contract between themselves and the plaintiff of April 11, 1936, said interveners were in fact assignees of the sheriff's certificate held by the plaintiff. In said resistance, interveners adopt in its entirety the resistance filed by the plaintiff, and in addition thereto allege that the defendants are not good farmers; that they have never farmed the land involved in a good husbandlike manner; that they have refused to keep up the premises by making repairs of the buildings or fences; that they have failed to fertilize the soil, or in any other way keep the same productive; and that the acts of defendants therein result in the committing of waste.

Trial of the issues involved upon said application for extension and the resistances thereto was commenced on March 15, 1937, and on March 18, 1937, the ruling of the trial court was filed, which ruling sustained the resistances of plaintiff and interveners to defendants' application to extend the period of redemption, denied any further extension of the period of redemption, and ordered sheriff's deed to issue forthwith to the interveners upon surrender and delivery by them of sheriff's certificate. From this ruling of the court the defendants have appealed.

In view of the conclusion that we have reached upon the merits of whether or not good cause existed to prevent the granting of a further extension of the period of redemption, it is unnecessary to give any consideration to the contention of plaintiff-appellee and interveners-appellees, that the acts of the 47th General Assembly providing for the extension of the period of redemption is unconstitutional, or their contention that the court was without jurisdiction to grant a further extension on account of the fact that the order and notice had not been entered or given until after the prior extended period had expired. However, as to this proposition, see First Trust Joint Stock Land Bank v. Albers, 224 Iowa 865, 277 N. W. 451, wherein we held contrary to the contention of appellees.

It is established from the evidence without conflict that the judgment in favor of plaintiff was for the sum of $45,906.42;

that at the sale under special execution the 440 acres of real estate involved sold for the sum of $42,934.80; that the plaintiff-appellee, between the 30th day of April, 1932, and the 15th day of March, 1937, paid taxes on the real estate involved in the sum of $1,774.81; that the plaintiff-appellee, on the 11th day of March, 1937, paid insurance on the buildings situated on said real estate in the sum of $168; that the plaintiff-appellee received no payments on its indebtedness during the years 1931 and 1932; that in 1933 plaintiff-appellee received from appellants a total amount of $813.16; that after January 15, 1934, plaintiff-appellee received from appellants the sum of $892.16; that thereafter a receiver was appointed for the premises involved, who filed three reports, one on June 6, 1935, one on June 27, 1936, and one on March 15, 1937; and that the net proceeds realized from the period covered by all three of said reports amounted to $3,554.65. It is likewise established from the evidence, without conflict, that appellants endeavored to refinance through the Grundy County National Federal Loan Association, and the highest commitment made by that association was for a loan of $29,500; that in 1917 appellant Cornelius Abkes inherited free from debt, all the real estate involved, except 80 acres thereof, which 80 acres was purchased by him, and for which he contracted an indebtedness of $8,000; and that on March 15, 1937, the amount necessary to effect a redemption was within a few dollars of $51,000. At the time of the hearing there were unreleased chattel mortgages on file in the office of the county recorder of Butler County, executed by appellant Cornelius Abkes, aggregating the sum of $6,993.10. Said appellant, however, testified that he had made payment of one of said mortgages in the sum of $40; that he had made payment of $225 to apply upon another mortgage; that he had made payment of a mortgage covering a corn picker (the amount thereof not being shown in the record); and that he had partly paid a mortgage of $1,265 upon some livestock. There is no showing in the record that said appellant is possessed of any personal property other than his statement that he bought some cattle in 1936, which, if he remembered correctly, consisted of 36 head, and which were bought in connection with the chattel mortgage of $1,265 above referred to.

The evidence offered on behalf of appellees as to the value of the real estate involved, places a value upon this real estate

of approximately $90 an acre, and likewise an actual sale thereof was made to the interveners for the sum of $40,000.

Witnesses called on behalf of appellants testified that in their opinion the value of the real estate was from $125 to $135 an acre, but it was developed upon cross-examination of some of the witnesses that very little, if any, land had been sold in that vicinity for the past few years; that included in what few sales there had been was one 20-acre tract close to the land in question that was sold at $85 per acre, and one additional 40-acre tract which sold for $100 per acre; and none of said witnesses knew or had heard of any sales in that vicinity where any land had been sold for a sum in excess of $100 an acre. We do not understand that such estimates of value are to be accepted by us blindly when they are in dispute, and when, from the entire record, we are convinced that such estimates are far in excess of the actual value. We are convinced herein, in spite of these expressions of opinion, that the actual value of the real estate is far below the amount of $51,000 required to make redemption. It is likewise apparent that upon the entire record, that the appellants herein are insolvent, that appellant Cornelius Abkes has failed to make any progress towards reducing this indebtedness, or meet the carrying charges thereon; either during the time involved in the foreclosure, or for a number of years preceding. This is particularly emphasized when we realize that in 1917 he inherited 360 acres of this land free from debt, that he contracted an indebtedness of $8,000 in the purchase of an additional 80 acres, and from that beginning this indebtedness has grown until the land is now encumbered to the amount of $51,000. In view of his financial condition and his past record, it hardly seems reasonable to even predict that there could be a possibility of his meeting this obligation, if the period of redemption should be extended to 1939.

■■■ Section 2 of chapter 78 of the Acts of the 47th General Assembly, in directing the court to extend the period of redemption to March 1, 1939, unless good cause is shown to the contrary, provides as follows:

"However a showing of present insolvency of the mortgagor or mortgagors and/or present inadequacy of the security shall not in themselves be sufficient to constitute good cause within the meaning of this act."

We are satisfied that it is our duty to recognize and observe the foregoing mandate of the legislature, and likewise recognize that if there is only a showing of present insolvency, and of present inadequacy of security, then in compliance with that statute it is not our province to deny the extended period of redemption. There is no warrant for any court to deny said extended period of redemption, unless there is an affirmative showing of good cause why said period should not be extended, and such good cause cannot be limited to a showing of present insolvency and present inadequacy of the security.

Different witnesses testified at the hearing that there was no evidence whatever of any fertilizer being placed upon the land in question; likewise, that the crops during the past few years were not rotated; likewise, that piles of manure had been allowed to accumulate, during the past few years, and had not been spread over the land as a fertilizer; and likewise, that numerous buildings on the premises involved had been allowed to deteriorate, and were not being kept in proper state of repair. Cornelius Abkes was the only appellant who testified upon the trial, but at no place in his testimony do we find any denial of the matters above set out. Likewise, this testimony is not controverted by any witness, unless the statement, ''I think the farm has been farmed the usual way'', made by one witness, and the statement, ''Well, I went on his farm this winter, or last fall, and I didn't see so much out of place on his farm'', made by another witness, could be construed as a denial thereof.

▮▮▮ Upon this record we are satisfied that waste was committed by defendants, which certainly has operated to further depreciate the value of plaintiff's security. We feel that such commission of waste, coupled with the insolvency of the mortgagors, the gross inadequacy of the security, and the further fact that there is no reasonable probability whatever that this land can ever be redeemed by appellants, warranted the trial court in finding that good cause did exist as to why no further extension should be granted, and that the discretion of the trial court therein was not abused.

▮▮▮ Appellees have filed herein a motion to strike appellants' abstract and to affirm. The appeal in this action was perfected by filing notice of appeal in the office of the clerk on March 24, 1937. Appellants thereafter prepared their abstract and filed the same with the clerk of this court on July 20, 1937,

which abstract consisted of 37 printed pages, and of the 37 printed pages appellants devoted one and three-fourths pages to a recital of the testimony given during the trial, and in setting out such purported testimony appellants simply stated their conclusions as to what was testified to by each particular witness. In the additional abstract that was later filed by appellees, we find 27 printed pages of testimony. Following the preparation and filing of abstract by appellants, they did not immediately file the transcript, or translation of the shorthand notes, in the office of the clerk of the district court, and in fact had not filed such transcript or translation as late as the 22d day of October, 1937, just prior to the date when appellees' motion to strike appellants' abstract was filed herein. Section 12850-g1 of the Code provides as follows:

"The shorthand reporter's translation of his report of a trial, duly certified by said reporter as correct, and from which an abstract, or an amendment to the abstract, has been prepared and served on appeal, shall be filed with the clerk of the district court immediately after said abstract or amendment is served on the opposite party, and be deemed a public record for the use of all parties to the appeal."

It is to be observed that appellants failed to comply with the provisions of said section, and, as a result thereof, appellees at the time of filing said motion were deprived of the use of the transcript or translation of the shorthand notes for the preparation of an amended abstract. Section 12850-g1 became part of the law of this state through an enactment of the 46th General Assembly, chapter 121, and it is our thought that this particular section was incorporated into the law for the very purpose of preventing a situation such as existed in the instant case. In the case of Goltry v. Relph, 224 Iowa 692, 698, 276 N. W. 614, 617, a similar situation was involved, and therein Justice Anderson, in speaking for the court, construes said section to be mandatory, and one that must be strictly followed. But in said case, on account of the fact that there had been no prior construction of said section by this court, no ruling was made upon the motion to dismiss, and in said opinion appears the following language:

"We are inclined to take the appellees' view of the con-

struction of this statute and its requirements, that the statute was enacted by the 46th General Assembly for the purpose of expediting appeals and for the purpose of requiring the appellant to obtain and file a full and complete transcript or translation of the reporter's notes. The construction we have put upon this statute does not antagonize the provisions of Rule 16 of this court, which requires only so much of the record as may be necessary to a full understanding of the questions presented for a decision to be included in the abstract. The appellant may make his abstract as brief as he may elect if it is sufficient to present the issues on appeal; but this does not relieve him from the requirements of the provisions of section 12850-g1 in obtaining and filing a translation of the reporter's notes taken upon the trial. We have thus construed the section of the statute, for the first time, to advise the bar fully that the section under discussion must be strictly followed. However, in the instant case we have not ruled upon the motion to dismiss for the reason, as stated, we have not heretofore construed the section of the statute involved in the motion to dismiss."

We realize that at the time of filing the motion herein, on October 27, 1937, the opinion in the Goltry case had not yet been filed, and at that time counsel were not advised of our construction of said section 12850-g1. For that reason, as in the Goltry case, we are not in the instant case ruling upon the motion to dismiss, but do again, as in the Goltry case, advise the bar fully that this section must be strictly followed.

For the reasons we have heretofore set out, we are satisfied that the trial court did not abuse its discretion in refusing to grant an extended period of redemption, and this case is hereby affirmed.—Affirmed.

STIGER, C. J., and HAMILTON, ANDERSON, KINTZINGER, DONEGAN, and SAGER, JJ., concur.